Filing # 240010971 E-Filed 01/21/2026 10:42:42 PM

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY,
FLORIDA

**CLAUDETTE R. VANNI,**

      **Plaintiff,**

v.

**STATE COURTS SYSTEM/THE
SEVENTEENTH JUDICIAL
CIRCUIT COURT OF FLORIDA,**

      **Defendant.**

_____/

**CASE NO.: 25-CA-15624**
**FLA BAR NO.: 0739685**

## AMENDED COMPLAINT

Plaintiff, CLAUDETTE R. VANNI, hereby sues Defendant, the STATE COURTS SYSTEM/THE SEVENTEENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes, 29 U.S.C. §629 et seq., 42 U.S.C. §2000e and 42 U.S.C. §12101 et seq.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, CLAUDETTE R. VANNI, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her disability, gender, and age, and she was retaliated against after reporting Defendant's unlawful employment practices.



EXHIBIT
3

4.      At all times pertinent hereto, Defendant, the STATE COURTS SYSTEM/THE SEVENTEENTH JUDICIAL CIRCUIT COURT OF FLORIDA, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

### CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

### STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, a 56-year-old disabled woman, began her employment with Defendant in or around July 2012 and held the position of General Magistrate at the time of her wrongful termination on August 19, 2024. Plaintiff, during her tenure with Defendant, was responsible for handling probate and mental health cases. Ironically, Plaintiff ultimately became a victim of Defendant based upon her own requests for accommodation due to Post Traumatic Stress Disorder, her gender and age. She was also victimized due to her request and receipt of accommodations for being unable to receive the Covid-19 vaccine, due to medical contraindication.

7.      Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her age, gender, disability, and because she reported Defendant's unlawful activities, which included their unlawful employment activities, and was subject to retaliation thereafter. (All incidents contained within this complaint occurred within February 2022 through October 24, 2024, and are not an all-inclusive list of the unlawful treatment that Plaintiff suffered at the hands of the Defendant.)

8.      The disparate treatment and retaliation came at the hands of specifically but not limited to Trial Court Administrator Joe D'Amico, former Chief Judge Jack Tuter, Human Resources Taiwo Akinkunmi, and former Administrative Magistrate Randi Boven.

9.      During her tenure, Plaintiff performed with distinction, having been nominated more than ten times by the Judicial Nominating Commission for consideration as a Circuit Judge, with the support of Tuter.  Plaintiff held the position of magistrate from 2012 until her termination, discussed below.

10.     In 2021, Boven was the Administrative Magistrate with some supervisory authority over Plaintiff including time and attendance.  Tuter was the Chief Judge as of the 2021 time period and he had supervisory authority over Plaintiff, having the ability to both hire and fire magistrates. In 2021, Kathy Pugh, was the Trial Court Administrator with supervisory authority over Plaintiff and she retired in 2022.  Jospeh D'Amico replaced Pugh in 2022 and then had supervisory authority over Plaintiff.   Boven, Tuter and D'Amico all collectively participated in the decision to fire Plaintiff, together with Akinkunmi, as discussed below.

11.     In or around June, 2021, during the COVID-19 pandemic, Tuter granted Plaintiff an accommodation to work from home due to her inability to receive the Covid-19 vaccine due to medical contraindications. At that time, around June 2021, Plaintiff spoke to both Tuter and Trial Court Administrator, Kathy Pugh, about the fact that she could not be vaccinated due to a history of anaphylactic shock, biphasic allergic reactions and severe allergies.  Plaintiff provided a letter and medical documentation to Pugh at her request describing Plaintiff's medical and disabling conditions dated around June 26, 2021 showing that she was unable to receive the Covid-19 vaccine.  Kathy Pugh actually acknowledged that Plaintiff's inability to receive the Covid-19 vaccine appeared to be an ADA issue. However, ultimately, she advised Plaintiff to seek

accommodations by sending a letter with medical documentation, instead of filing a formal ADA request, as Tallahassee/the Governor was not granting ADA accommodations for the inability to receive the Covid-19 vaccine.

12.     Although most employees and magistrates were required to return to in-person work in or around July 2021, Plaintiff was permitted to continue working from home as a disability accommodation for approximately an additional seven months.

13.     In February 2022, Defendant ended Plaintiff's work-from-home accommodations after Boven, her supervisor, represented to Tuter that other magistrates had complained about Plaintiff being allowed to work from home.  During the time that Plaintiff worked remotely from home, there was no undue hardship on the Defendant because, by that time, many judicial proceedings were being handled remotely and all judicial proceedings in Plaintiff's division could be handled by zoom.  Moreover, Plaintiff being permitted to work from home had no effect on the other magistrates because Plaintiff continued to work her regular case load with no cases being reassigned to other magistrates.  For Baker Act cases that were in person, Plaintiff had worked out with another magistrate that he would cover these occasional in person hearings in exchange for Plaintiff covering hearings for this magistrate that were not required to be in person.

14.     Later that month in February, 2022, while Plaintiff was still working from home, Tuter telephoned Plaintiff and strongly advised that she resign rather than continue seeking disability related accommodations. This suggestion served as an ominous warning from Tuter of what was to come if Plaintiff did not acquiesce to his suggestion.  Plaintiff told Tuter that she did not intend to resign and that she needed the accommodations for her medical conditions.  She also told Tuter that she would return to work against medical advice because she loved her job and did not want to lose it.

4

15.     Upon returning to the courthouse in March 2022, Plaintiff was required to log her leave time on a group calendar. Plaintiff complained that this situation violated her rights as a disabled employee because, after returning to the courthouse, she had to frequently take leave due to disability related reasons. Consequently, she was on the public calendar much more than her colleagues and staff. Theses frequent leave entries, and Boven's restriction that Plaintiff was not permitted to indicate that she was frequently working during this leave time, intentionally gave her colleagues/staff the false impression that Plaintiff was simply not working as she should. On numerous occasions, Plaintiff requested permission from Boven and D'Amico to log her leave on a separate calendar that only management could see, as the public calendar's entries violated Plaintiff's confidentiality and appeared to have caused resentment in other magistrates, judges, and staff. Plaintiff's requests were denied and she continued to be forced to publicly disclose her leave time, as stated above.

16.     Notably, Plaintiff also suffers from Post Traumatic Stress Disorder (PTSD) of which Defendant became aware when Plaintiff disclosed this disabling condition for the first time on March 14, 2022, which was a short time after her return to work at the courthouse. From March 14, 2022 through July 2022, Plaintiff expressed to a number of people including Tuter, Kathy Pugh, D'Amico, Human Resources, and others that she would have a difficult time continuing to be supervised by Boven and being transferred to the Family Law Division because Boven had a history of mistreating Plaintiff and working under those circumstances would trigger Plaintiff's PTSD. Boven had a closer supervisory relationship over the magistrates in the Family Law Division than she had over the magistrates in the Probate/Mental Health Division – a transfer to the Family Law Division would mean that Plaintiff would be subjected to even more of Boven's hostility. Plaintiff was ultimately not transferred to the Family Law Division.

5

17.     After Plaintiff disclosed the fact that she had PTSD, Boven removed Plaintiff's previously granted lunch-hour accommodation. Plaintiff had been allowed to take her lunch hour at any time, including between 8:30 am and 9:30 am on days in which she was experiencing symptoms of her PTSD. Prior to March 14, 2022, although Plaintiff had not specifically identified the fact she was suffering from PTSD, she previously had flexible lunch and other hours due to "medical conditions" which were disclosed to her supervisors.

18.     On June 20, 2023, D'Amico directed Boven's and other assistants to overload Plaintiff's calendar with a disproportionately large numbers of show cause hearings in 2023. This went directly against the even distribution of cases mandated in Defendant's own administrative order applicable to case distribution. To show the magnitude of this problem, Defendant assigned **5,950** show cause matters that had been neglected for years **solely** to Plaintiff to case manage, schedule, and hear and would not evenly distribute them in accordance with the Defendant's administrative orders that mandated equal distribution of cases. To further discriminate against Plaintiff, these show cause matters were assigned to Plaintiff in an extremely disorganized manner - many of these cases lacked verified service, and required case management – a task that was outside of Defendant's job description for Plaintiff.

19.     During this time, Plaintiff was her own assistant and was not offered the assistant rotation to help with this discriminatory assignment, even though the assistant rotation was available to other magistrates. D'Amico and Tuter hid this disproportionate workload on spreadsheets, instead of allowing this information to be transparent within computer fields, to conceal their unlawful practices and to mislead others into believing that Plaintiff's case load was much lower than it was. From 2022 through 2024, Plaintiff was also excluded from professional events and meetings to which similarly situated magistrates were invited, including a 2024 event

6

attended by her eventual replacement, Caleb Johnston, a significantly younger male, thereby signaling her removal and paving the way for Johnston to assume her duties. Johnson is younger than Plaintiff by approximately 15 years.

20.     In September 2023, following the addition of a disproportionate number of cases to Plaintiff's workload, Plaintiff specifically detailed to Boven how PTSD affected her mornings and sought an accommodation, through a work deviation form, to begin work at 9:30 a.m. due to her debilitating symptoms . However, Boven, Tuter, D'Amico, and Akinkunmi denied the requests, continuing the pattern of hostility and harassment toward Plaintiff designed to alter Plaintiff's work hours in ways calculated to exacerbate the symptoms of her disability. Specifically, Plaintiff was not permitted to flex her hours. After Plaintiff's husband attended a meeting with her in March 2024 to vouch for her medical issues and PTSD, as the ADA permits him to assist his spouse in such a manner, she was told that she had to start hearings at 8:45 a.m. and that she had to be at work by 8:30 a.m.  Boven, herself, started hearings at 9:00 a.m. and other magistrates had different schedules, which shows the disparity in the way that Plaintiff was treated.

21.     Plaintiff was further humiliated in 2023 and 2024 when Clerk of Court staff were instructed to copy D'Amico on docket and petition-related emails involving Plaintiff, creating the false impression that Plaintiff was being investigated and disciplined for not doing her job. Additionally, despite being accommodated for nearly a decade by being permitted to maintain flexible hours, in 2022 this arrangement was revoked, forcing Plaintiff to work during her designated leave time and to sacrifice lunch breaks to self-accommodate.

22.     In January 2024, Plaintiff's physician completed a formal ADA accommodation form. Her mental health professional also submitted a letter requesting that she be given special accommodations including working from home when her PTSD symptoms were exacerbated and

modification of work hours. D'Amico denied Plaintiff's request for an ADA accommodation from her mental health professional on the pretext that the supporting form did not include documentation from a medical doctor, despite that the mental health provider properly completed the ADA letter/form. D'Amico and Tuter denied numerous other legally sufficient requests from Plaintiff for ADA accommodations, as well as other assistance that Plaintiff requested pursuant to the ADA/ADAAA that were submitted by her and her mental health professional. One ADA accommodation request by her physician was granted for a limited time, i.e., February 5, 2024 through March 6, 2024, but was revoked when a request for renewal of that request was made by that physician.

23.    In January 2024, Plaintiff was forced to assume responsibility for pro se estate cases outside of her normal duties, further evidencing unequal treatment. Plaintiff specifically complained to D'Amico that she was willing to take on these additional responsibilities but could not do so under the hostile conditions in which she was being forced to work.

24.    Plaintiff also noted to D'Amico that her counterpart, Yves Laventure, a male, had substantially fewer cases than she did but was not being loaded down with more. Laventure is ten years younger than Plaintiff.

25.    Despite Laventure agreeing to cover some of Plaintiff's cases to lighten her load, Defendant refused to allow him to do so in an effort to purposely cause Plaintiff's professional downfall and trigger her PTSD.

26.    In late January 2024, Plaintiff was required to attend a meeting set for the following week on January 29, 2024 under threat of termination despite providing medical and mental health documentation requesting that the meetings should be rescheduled later in the day to accommodate

her disabling condition. Plaintiff attended the meeting despite at great physical and emotional expense to Plaintiff.

27.   Prior to that meeting, on both January 25 and 26 , 2024, Plaintiff emailed D'Amico her doctors notes about the January 29, 2024 meeting needing to be moved to later in the day.  She also met with D'Amico and either Soble or Akinkunmi on January 25 and 26, 2024 and told them that she was subjected to a hostile work environment and that her treatment was inhumane.

28.   Plaintiff's hostile work environment that began in 2022 after requesting accommodations and thereafter disclosing her PTSD, included, but was not limited to ridicule; breaches of confidentiality; younger male magistrates being treated more favorably as set forth above; being excluded from division meetings and events; being falsely accused of not doing her work properly and she had to unnecessarily defend herself (while the male magistrate was not subjected to such interrogation); D'Amico insulted Plaintiff and caused her to consistently and unnecessarily defend herself even when Plaintiff was receiving ADA accommodations; D'Amico told Plaintiff that she was very intelligent and saw no evidence of a disability implying that she could not have a disability and be intelligent; she was falsely accused of having too light a workload when she had one of the highest, if not the highest, workload in the division; being given a significantly disproportionate amount of cases in violation of administrative orders that mandated equal distribution; being denied coverage of her workload despite having to provide coverage for another male magistrate; being denied the ability to complete hearings from home when she was previously able to do so and when judges continued to be able to do so; being permitted to complete hearings for another male magistrate from home when he had a conflict of interest with a female witness but Plaintiff was not able to complete her own hearings from home when she was sick; Boven tricking Plaintiff into thinking that she was being demoted and

transferred to another division when Plaintiff had seniority over the male magistrate in her division who was not being demoted/transferred; being yelled at by Tuter, D'Amico, and Boven when she was experiencing difficulties due to her PTSD; Tuter expressing anger at the idea of Plaintiff filing an ADA request and told Plaintiff that he did not know whether he was going to fire her after he yelled at her about the potential ADA filing (Tuter had a separate conversation with Plaintiff's husband and also expressed anger at the idea of Plaintiff filing an ADA request); Boven and D'Amico yelled at Plaintiff including when they told her that she had to learn a new computer system while she was her own assistant and when Plaintiff had to work on her personal time to meet her professional obligations; Plaintiff was deprived of the assistant rotation although it was afforded to other magistrates; Plaintiff was not permitted to flex her hours or obtain comp time even though other magistrates were able to do so; Plaintiff was made to attend work and meetings that D'Amico and Akinkunmi knew were unsafe and inhumane for Plaintiff to attend as she was not able to eat, drink, sleep or take medication for life threatening medical conditions in order for her to be able to attend the meeting on time; Plaintiff was subjected to Boven barging in Plaintiff's office and laughing for no apparent reason; Plaintiff was subjected to D'Amico and Boven's schemes, which included that in 2023 Boven attempted to trick Plaintiff into scheduling numerous hearings that had no orders of referral – an unlawful and grievable situation; Plaintiff was subjected to D'Amico's micromanaging, which included having to submit daily itinerary emails with the time that Plaintiff left her home – other magistrates were not subjected to such an intrusive procedure; Plaintiff was encouraged to use public bathrooms even when Plaintiff was passing by her home to get to another hospital on a Baker Act day (if she wanted to go inside her home to use the restroom, she would have to take her leave or lunch hour but she would not have to take her leave or lunch hour if she were using a public restroom);

10

Plaintiff was subjected to breaches of confidentiality of her protected information, including leave amounts and medical/ADA information; Plaintiff was micromanaged to the point that, while she was in transit from Baker Act proceedings, she was required to report when she reached certain streets so that D'Amico would be able to calculate when her lunch hour was to begin; Plaintiff was required to submit reports of Zoom times for hearings, even though it was distracting to keep track of such information and could have easily been provided by the 17th Circuit Judicial Information Systems department; D'Amico, Tuter, and Boven led judges, magistrates, and other staff to believe that Plaintiff's workload was vastly insufficient (when, in fact, it was disproportionately large) and that she was not working as she should, thereby destroying Plaintiff's professional reputation (in 2023, D'Amico and Boven admitted that they did not know what work was required in Plaintiff's division and what work was completed by her, yet they still led others to believe that Plaintiff was not working as required); Defendant ignored Plaintiff's solid proof of her disproportionate workload and her requests to have a meeting with the judges and staff to clear up the misconception that Plaintiff was not working as required; Plaintiff's requests for computer fields to input evidence of her workload were ignored by Defendant, so that the truth about her disproportionately large case load could remain hidden; Plaintiff's 5950 show cause assignment was concealed on spread sheets to cover up the truth about her discriminatory and disproportionate workload; Plaintiff was not given a case manager for the 5950 show cause matters that were solely assigned to her, even though case management was not part of her job description; Plaintiff was assigned pro se probate cases, despite that her existing workload was discriminatorily/disproportionately high – she was not even offered the assistance of a staff attorney, despite that the pro se assignment had a large administrative component, which had previously been designated to staff attorneys for many years; Plaintiff

11

told D'Amico that she obtained coverage for the pro se docket pursuant to Rules of Professionalism 4-1.3 and 4-5.2 – which rules prohibit an attorney from taking on a case, for example, if the attorney is too busy to provide due diligence, and prohibit an underling from following a supervisor's directive when a supervisor instructs the underling to do something wrong, for example, *if a supervisor tells an underling to handle a pro se docket when the underling has too many cases to be able to meet ethical and legal obligations*, both the underling and the supervising attorney (D'Amico, Boven, and Tuter) can be guilty of violating Florida Bar rules, if the underling follows the wrongful directive; Plaintiff was subjected to inefficient scheduling mandates designed to trigger her disability, as D'Amico would not allow Plaintiff to schedule sufficient office time needed to read, write or otherwise prepare for cases – he therefore interfered with Plaintiff's ability to make decisions; Plaintiff had to excessively work on her own time to meet professional obligations and was not permitted to obtain comp time; D'Amico would tell Plaintiff that he expected her to do such as being at work at 8:30 am when her disability was flared after which Plaintiff told D'Amico that he would not say that he expected her to hear if she were reportedly hearing impaired and wore a visible hearing aid, so he should apply the same standard to a person suffering from PTSD.  These are example only of the hostile work environment and disparate treatment to which Plaintiff was subjected and complained about during her employment in the early 2024 time period.

29.     In 2023, an employee of the 17th Judicial Circuit told Plaintiff that D'Amico and Boven were trying to get Plaintiff to quit her job.

30.     During the meetings on January 25 and 26, 2024, Plaintiff told D'Amico and others present that they were treating her differently because of her disability and if they could see her disability, i.e., if she wore a hearing aid or was in a wheelchair, she would have been

12

treated pursuant to the law. She begged them to talk to her physician and mental health professional but they refused. The time of the meeting on January 29, 2024, was never moved to later in the day despite Plaintiff's request for a simple accommodation to move the meeting later in the day.

30. As a result of the actions by Defendant described in part above, Plaintiff suffered migraines; inability to sleep; nightmares; flashbacks – even from childhood; humiliation due to a destroyed reputation; depression; fear that others in the workplace were being mistreated and she could not help them; extreme anxiety; stress induced asthma; digestive issues; vertigo triggered by stress; isolation; and PTSD symptoms caused from trauma.

31. Unlike other magistrates, in 2023 and 2024, Plaintiff was not permitted to work from home on terms available to other magistrates. Boven told Plaintiff she could work from home only one day per week even though the governing rules permitted two. On January 29, 2024, in a meeting with HR Taiwo Akinkunmi, Boven admitted that she did not tell Plaintiff that she could work from home a second day per week, as D'Amico would be upset if she did. Boven's misrepresentation caused Plaintiff to work on her leave time unnecessarily and Plaintiff said so during the January 29, 2024 meeting. Plaintiff also asked for comp time during this meeting to offset the effects of the misrepresentation. Taiwo Akinkunmi replied that she would show Plaintiff how to put comp time on her time card, however, she never did. Plaintiff complained to D'Amico about Boven's misrepresentation, as it was obvious discrimination against Plaintiff because of Plaintiff's disabilities, due to Plaintiff's reporting of protected complaints, and for requesting accommodations. However, no corrective action was taken.

32. In March, 2024, Plaintiff submitted an extension of her accommodations by her physician, which was denied. Between March and August, 2024, Plaintiff submitted additional

requests for accommodations by her mental health professional, which included requests to work flexible hours and to work from home, due to her PTSD, which were likewise denied. Plaintiff also asked verbally and in writing for accommodations in the form of flex hours, telework, and for the interactive process from March 2024 through August 2024, all of which were denied. Not once did the Defendant engage in the interactive process despite Plaintiff's numerous requests for accommodations and essentially begging the Defendant to engage in the interactive process. When her physician's ADA request was granted in February 2024, Defendant never asked how the accommodations were working for Plaintiff or even, "How can I help?" Instead, D'Amico insulted Plaintiff and caused her to consistently and unnecessarily defend herself. For example, D'Amico accused Plaintiff of signing identical reports for different hearings. Plaintiff proved these allegations to be false and anyone who actually *read* the reports would have observed that they were not identical as D'Amico falsely alleged.

33. Significantly, the denial of the accommodations Plaintiff requested, i.e., flexible work hours, coming in later than 8:30 a.m., and teleworking when necessary, resulted in the deterioration of Plaintiff's health and mental health which impacted her ability to work and live a normal life.

34. On August 16, 2024, Plaintiff was informed that one of her previous requests for an extension to submit a new ADA/ADAAA request, and for a temporary ADA/ADAAA accommodation to be provided in the interim, were denied by D'Amico and Tuter. In this ADA request, she was requesting flex hours and telework. There was no interactive process pursuant to the ADA/ADAA before this and other denials.

35. After this request was denied, that same day, August 16, 2024, Plaintiff asked for grievance paperwork, as D'Amico indicated that he would not be considering any other forthcoming ADA request.

14

36. On August 19, 2024, Plaintiff submitted another formal ADA request for special accommodations due to PTSD caused by the hostile and retaliatory work environment. On the same day, and one business day after the request for the grievance paperwork, Defendant unlawfully terminated Plaintiff's employment. Thereafter, Plaintiff was replaced with Caleb Johnston, a younger male. Plaintiff was previously informed by a Judge from the 17th Judicial Circuit [after her disabilities were disclosed to Defendant] that Court Administration was trying to give her job to Caleb Johnston to prevent him from taking another position outside of the Circuit.

37. Defendant asserted that Plaintiff's position was eliminated due to the "perception" that Plaintiff "just wanted to make the rules," a pretext for unlawful discrimination and retaliation. Unlike Plaintiff, Laventure, a male, was retained despite holding hearings for approximately two months while his Florida Bar license was inactive, and carrying a lighter caseload than Plaintiff. He was also retained despite D'Amico being provided information that Laventure was allowing his assistant to stamp his signature on reports that indicated he reviewed documents, when he did not – a situation that Tuter and D'Amico were obligated to remedy.

38. Plaintiff was subjected to adverse treatment and ultimately terminated because of her disability, her protected requests for accommodation, her protected complaints of discrimination, harassment and a hostile work environment, her protected complaints of the Defendant's unlawful practices, and because of her gender and age. Plaintiff had even contacted Tallahassee/OSCA Trial Court Administrator, Eric McClure, and Tallahassee/OSCA Human Resources, Tim Middleton, to ask for help. However, because, at her request, she spoke with them in confidence, they were unable to help.

39. At all times pertinent hereto, Plaintiff was able to perform the essential functions of her position with Defendant with and/or without an accommodation.

40. Plaintiff has retained the undersigned to represent her interests in this cause and is

obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## AGE DISCRIMINATION

41.     Paragraphs 1-10, 19, 23, 24, 25, 36, 37, 40 are realleged and incorporated herein by reference.

42.     This is an action against Defendant for discrimination based upon age brought under Chapter 760, Florida Statutes based on disparate treatment.

43.     Plaintiff has been the victim of discrimination on the basis of her age in that she was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her age.

44.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.  Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

45.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

46.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

16

47.     Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon age.

48.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief and equitable relief.

## COUNT II
## AGE DISCRIMINATION

49.     Paragraphs 1-10, 19, 23, 24, 25, 36, 37, 40 are re-alleged and incorporated herein by reference.

50.     This is an action against Defendant for age-based discrimination brought under 29 U.S.C. §621 et seq. for disparate treatment.

51.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's age in that Plaintiff was treated differently than similarly situated younger employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his age.

52.     Defendant failed to hire, discharged, or otherwise discriminated against Plaintiff with respect to Plaintiff's compensation, terms, conditions, or privileges of employment because of, at least in part, Plaintiff's age.

53.     Alternatively, Defendant deprived attempted to deprive Plaintiff of employment opportunities and/or took actions which adversely affected Plaintiff's status as an employee in that Defendant limited, segregated, or classified Plaintiff or reduced Plaintiff's wages.

54.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

55.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

56.     Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

57.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

58.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

59.     Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon age.

60.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief, liquidated damages where appropriate, and equitable relief.

## COUNT III
## ADEA RETALIATION

61.     Paragraphs 1-10, 19, 23, 24, 25, 36, 37, 40 above are re-alleged and incorporated.

62.     This count sets forth a claim for unlawful retaliation under 29 U.S.C. §623.

63.     Defendant is an employer as that term is used under the applicable statutes referenced above.

64.     Plaintiff was an employee or applicant for employment as those terms are used under the applicable statutes referenced above.

65.     Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under 29 U.S.C. §621 et seq. specifically but not limited to her reporting in paragraphs 23, 24, 27, 28 and 29 above, and adverse employment actions were then taken against Plaintiff.

66.     The foregoing unlawful actions by Defendant were purposeful.

67.     Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's termination.

68.     Plaintiff is a member of a protected class because of her reporting of Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

69.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment,

humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief.

## COUNT IV
## GENDER DISCRIMINATION

70.    Paragraphs 1-10, 19, 23, 24, 25, 28, 36, 37, 40 are re-alleged and incorporated herein by reference.

71.    This is an action against Defendant for discrimination based upon gender brought under Chapter 760, Florida Statutes based on disparate treatment.

72.    Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

73.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

74.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

75.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

76.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

77.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's termination.

78.     Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon gender in violation of Chapter 760, Florida Statutes.

79.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

**COUNT V**
**SEX DISCRIMINATION**

80.     Paragraphs 1-10, 19, 23, 24, 25, 28, 36, 37, 40 are re-alleged and incorporated herein by reference.

81.     This is an action against Defendant for discrimination based upon sex brought under 42 U.S.C. §2000e et seq. based on disparate treatment.

82.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's sex.

83.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff

21

or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

84.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

85.     Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

86.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a sex-based nature and in violation of the laws set forth herein.

87.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

88.     The events set forth herein led, at least in part, to Plaintiff's termination on contrived allegations.

89.     Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon gender in violation of 42 U.S.C. §2000e et seq..

90.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief, and equitable relief.

## COUNT VI
## **DISABILITY DISCRIMINATION**

91.     Paragraphs 1 through 40 are realleged and incorporated herein by reference.

92.     This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes based on disparate treatment and the refusal to accommodate Plaintiff and engage in the interactive process with her.

93.     Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability.  During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

94.     Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, including the refusal to engage in the interactive process with her, which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

95.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

96.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

97.     Defendant's conduct and omissions constitute intentional discrimination and unlawful employment practices based upon disability or perceived disability or her record of having an impairment.

98.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

### COUNT VII
### DISABILITY DISCRIMINATION

99.     Paragraphs 1 through 40 above are re-alleged and incorporated herein.

100.    This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq. based on disparate treatment and the refusal to accommodate Plaintiff and engage in the interactive process with her.

101.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

102.    Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff and engage in the interactive process with her, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

103.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

24

104. In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

105. The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

106. Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

107. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief.

## COUNT VIII
## ADA RETALIATION

108. Paragraphs 1 through 40 above are re-alleged and incorporated.

109. Defendant is an employer as that term is used under the applicable statutes referenced above.

110. This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203 specifically but not limited to her reporting in paragraphs 23, 24, 27, 28 and 29 above.

111. Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing under 42 U.S.C. §12101, et seq. and adverse employment actions were then taken against Plaintiff.

112.   Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

113.   The foregoing unlawful actions by Defendant were purposeful.

114.   Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's termination.

115.   Plaintiff became a member of a protected class after reporting Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

116.   As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief.

### COUNT IX
### RETALIATION – Chapter 760

117.   Paragraphs 1 through 40 are realleged and incorporated herein by reference.

118.   Defendant is an employer as that term is used under the applicable statutes referenced above.

119.    The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under Chapter 760, Florida Statutes, specifically but not limited to her reporting in paragraphs 23, 24, 27, 28 and 29 above.

120.    The foregoing unlawful actions by Defendant were purposeful.

121.    Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

122.    Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

123.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief and equitable relief.

## COUNT X
### RETALIATION

124.    Paragraphs 1 through 40 are re-alleged incorporated herein by reference.

125.    This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a, specifically but not limited to her reporting in paragraphs 23, 24, 27, 28 and 29 above.

126. Defendant is an employer as that term is used under the applicable statutes referenced above.

127. The foregoing unlawful actions by Defendant were purposeful.

128. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

129. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

130. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

131. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

### COUNT XI
### HOSTILE WORK ENVIRONMENT- BASED ON DISABILITY

132. Paragraphs 1 through 40 are realleged and incorporated herein by reference.

133. This is an action against Defendant for discrimination based upon disability. This is a claim for hostile work environment brought under Chapter 760, Florida Statutes and 42 U.S.C. §12101 et seq.

134. Plaintiff has been the victim of a hostile work environment based on her disability. She belongs to a protected group as she is disabled. She was subject to unwelcome harassment

28

during her employment with Defendant as set forth above. The harassment was based on her protected characteristic, i.e., her disability and requests for accommodation. The harassment was sufficiently severe or pervasive to alter the conditions of her employment and the Defendant is responsible for the hostile work environment. After reporting the hostile work environment, Defendant did nothing but ramped up the adverse treatment of her and then fired her.

135. Defendant is liable for the hostility towards Plaintiff and her termination because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff but, in fact, exacerbated the harm to Plaintiff by exiling her, falsely accusing her of not performing her job duties, refusing to accommodate her and taking other actions described more fully above. Furthermore, Defendant knowingly condoned and ratified the hostile environment as more fully set forth above because it allowed it and participated in same.

136. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

137. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were based on Plaintiff's disability and requests for accommodations and in violation of the laws set forth herein. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff and to actions that adversely affected Plaintiff's to perform her duties, as set forth above.

138.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability.

139.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

### COUNT XII
### HOSTILE WORK ENVIRONMENT- BASED ON GENDER

140.    Paragraphs 1-10, 19, 23, 24, 25, 28, 36, 37, 40 are realleged and incorporated herein by reference.

141.    This is an action against Defendant for discrimination based upon gender. This is a claim for hostile work environment brought under Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

142.    Plaintiff has been the victim of a hostile work environment based on her gender. She belongs to a protected group as she is a female. She was subject to unwelcome harassment during her employment with Defendant as set forth above. The harassment was based on her protected characteristic, i.e., her gender. The harassment was sufficiently severe or pervasive to alter the conditions of her employment and the Defendant is responsible for the hostile work environment. After reporting the hostile work environment, Defendant did nothing but ramped up the adverse treatment of her and then fired her.

143.    Defendant is liable for the hostility towards Plaintiff and her termination because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew

30

or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff but, in fact, exacerbated the harm to Plaintiff by exiling her, falsely accusing her of not performing her job duties, and taking other actions described more fully above. Furthermore, Defendant knowingly condoned and ratified the hostile environment as more fully set forth above because it allowed it and participated in same.

144. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

145. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were based on Plaintiff's gender and in violation of the laws set forth herein. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff and to actions that adversely affected Plaintiff's to perform her duties, as set forth above.

146. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

147. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT XIII
## HOSTILE WORK ENVIRONMENT- BASED ON AGE

148.    Paragraphs 1-10, 19, 23, 24, 25, 28, 36, 37, 40 are realleged and incorporated herein by reference.

149.    This is an action against Defendant for discrimination based upon age brought under Chapter 760, Florida Statutes and the ADEA.  This is a claim for hostile work environment.

150.    Plaintiff has been the victim of a hostile work environment based on her age.  She belongs to a protected group as she is over the age of 40.  She was subject to unwelcome harassment during her employment with Defendant as set forth above.  The harassment was based on her protected characteristic, i.e., her age.  The harassment was sufficiently severe or pervasive to alter the conditions of her employment and the Defendant is responsible for the hostile work environment.  After reporting the hostile work environment, Defendant did nothing but ramped up the adverse treatment of her and then fired her.

151.    Defendant is liable for the hostility towards Plaintiff and her termination because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff but, in fact, exacerbated the harm to Plaintiff by exiling her, falsely accusing her of not performing her job duties, and taking other actions described more fully above.  Furthermore, Defendant knowingly condoned and ratified the hostile environment as more fully set forth above because it allowed it and participated in same.

152.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

153.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were based on Plaintiff's age and in violation of the laws set forth herein. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff and to actions that adversely affected Plaintiff's to perform her duties, as set forth above.

154.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon age.

155.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement, reinstatement during litigation, retraction, an apology, and that the State Courts System receive training regarding people with invisible disabilities.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been furnished to all counsel of record by eportal this 21st day of January, 2026.

/s/ Marie A. Mattox
Marie A. Mattox

34